CARLOS M. OCHOTECO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, FAUSTO RAMOS QUIRÓS, JUDGE, Respondent; COMMONWEALTH OF PUERTO RICO, Intervener.

No. C-63-1.     Decided June 5, 1963.

*Félix Ochoteco, Jr.,* for petitioner. *Rodolfo Cruz Contreras, Acting Solicitor General,* and *Héctor R. Orlandi, Assistant Solicitor General,* for intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

This is a proceeding involving the confiscation of a motor vehicle in which the owner thereof challenged the validity of the confiscation before the San Juan Part of the Superior Court. Plaintiff and defendant submitted the case to the trial court on the basis of the following stipulation of facts signed by them:

"Now come the parties in above-entitled case and through their respective undersigned attorneys, and after the corresponding judicial approval, they respectfully

## STIPULATE:

"To submit, as they do hereby submit, the above-entitled case without holding a trial and for the rendering of proper judgment, solely on the basis of the following

### DETERMINATION OF FACTS:

"1. That on February 3, 1961, between 10:30 and 11:00 p.m., on Fernández Juncos Avenue, in front of pier No. 2, members of the Commonwealth Police proceeded to seize and confiscate a Chevrolet automobile, 1957 model, license plate No. 649-727, belonging exclusively to plaintiff, who as such had registered the same in the Office of the Secretary of Public Works of the Commonwealth.

"2. That the said seizure and confiscation of said vehicle on the afore-mentioned date and place were carried out in pursuance of Act No. 39, approved July 4, 1960 (25 L.P.R.A. § 447), as a result of the fact that on said day of February 3, 1961, and while the same was being occupied by Daniel Domingo Núñez Mojica, who operated it, Jesús Negrón Machuca, Reinaldo Pagán García and José González Rodríguez, there were seized inside the vehicle, and not on any of the afore-mentioned persons, a Colt revolver, caliber .38, which was registered in the name of Ramón Quiñones López who had reported to the Detective its disappearance from his residence, and a pistol which it is not known in whose name it is registered.

"3. That informations were filed in the Superior Court of P.R., San Juan Part, criminal cases Nos. 61-459, 61-460, 61-465, 61-473 and 61-479, against the said Daniel Domingo Núñez Mojica, Jesús Negrón Machuca, Reinaldo Pagán García and José González Rodríguez, respectively, for carrying and possessing the two aforesaid weapons, as a result of which the aforesaid vehicle was confiscated.

"4. That the corresponding trial of the five criminal causes having been held on September 29, 1961, by judgments delivered by Judge Willys Ramos, defendants were acquitted on the

ground that the search of said vehicle was illegal and, hence, the seizure of the afore-mentioned two weapons.

"5. That around 5 p.m. of Friday, February 3, 1961, the time to quit work of the said Daniel Domingo Núñez Mojica, who was an employee of plaintiff in his business of sale of blinds, doors, and awnings situated in Cataño, P.R., the said plaintiff instructed his employee to load the vehicle in question, which he did, with blinds which were to be used in a house which Rafael Torrech Ríos was constructing in the ward of Juan Sánchez, of Bayamón, P.R. That plaintiff expressly instructed his employee to use the vehicle loaded with the blinds exclusively to go to his residence situated in the place Sabana of the ward of Pueblo Viejo of Guaynabo, and after reaching his residence not to use the vehicle in question until early Saturday morning, February 4, 1961, when he should take, deliver and unload the blinds at the house under construction of Rafael Torrech Ríos situated in the afore-mentioned place, where plaintiff's customer and his carpenter would be expecting the blinds in order to install them on that Saturday, it being necessary therefore to start work early that day which was the only day which the laborer had for installing them.

"6. That after the afore-mentioned employee of plaintiff arrived at his residence driving the vehicle object of the confiscation, he bathed and changed his clothes and proceeded to unload the blinds in his residence, and after unloading and operating it himself, he invited his friends, the said Jesús Negrón Machuca, Reinaldo Pagán García, and José González Rodríguez, to go out to have a good time, which they did, in the company of street-walkers, and they went to several amusement places where they imbibed intoxicating liquor and danced.

"7. That while the afore-mentioned four occupants of plaintiff's vehicle were still enjoying themselves in the manner aforesaid, the vehicle was stopped and searched on the said day, hour, and place for an alleged violation of the Traffic Law, the abovementioned two weapons were seized and the occupants, among whom was not plaintiff herein nor the load, were arrested.

"8. That by letter of February 16, 1961, mailed on the following day, the Transportation Office informed plaintiff that the value of the vehicle was $1,450.

PRAYER

"The parties respectfully pray this Hon. Court:

"(a) To consider the present case submitted for judgment after approval of this stipulation.

"(b) To grant 10 days to plaintiff to file a memorandum and a like term to defendant to reply.

"San Juan, P.R., September 12, 1962.

SECRETARY OF JUSTICE

By: (s) Julia C. Marchand
      Julia Carmen Marchand
      Special Prosecuting Attorney

                (s) Félix Ochoteco, Jr.
                FÉLIX OCHOTECO, JR.
                Attorney for Plaintiff."

On the basis of the facts stipulated the trial court rendered judgment making the following conclusions of law:

"CONCLUSIONS OF LAW:

"We have studied carefully the memorandum submitted by plaintiff who, in a laudable effort, invites this Court to distinguish between the case at bar and the well-settled rule of our Supreme Court in cases involving the confiscation of motor vehicles.

"Although plaintiff's contention is full of logic, yet, according to the state of the decisions in our jurisdiction, every proceeding involving the confiscation of a vehicle, being directed against the latter and not against its owner, is a proceeding 'in rem,' wherefore the rights of third innocent parties are neither involved nor protected. *General Motors Acceptance* v. *Brañuela,* 61 P.R.R. 701; *General Motors Acceptance* v. *District Court,* 70 P.R.R. 898; *Stuckert Motor* v. *Dist. Court; Comm. of P.R., Int.,* 74 P.R.R. 494; *Colón* v. *Sec. of the Treasury,* 79 P.R.R. 809 (per curiam) ; *cf. Downs* v. *Porrata, Pros. Atty,* 76 P.R.R. 572.

"The complaint will be dismissed, with costs."

We issued certiorari to review the foregoing judgment, in pursuance of § 2(a) of Act No. 39 of June 4, 1960 (Sess. Laws, p. 66).

Section 37 of Act No. 17 of January 19, 1951 (Sp. Sess. Laws, p. 426), as amended by Act No. 39 of June 4, 1960, provides that "the Secretary of Justice shall seize any vehicle, mount, vessel or plane which loads, unloads, transports, carries or transfers, or which is used for loading, unloading, transporting, carrying, or transferring, or which is caught loaded, or in the act of loading, unloading, transporting, carrying or transferring, any weapon in violation of this act." Section 37 also provides that for the seizure and disposal of vehicles, mounts, vessels or planes, there shall be followed the same procedure established by the Act known as "Uniform Vehicle, Mount, Vessel and Plane Seizure Act."

The Uniform Act *supra* authorizes the owners of the property so seized, or those having any right therein, to *challenge* the confiscation, in which case the questions that may arise shall be decided and all other proceedings shall be conducted as in an ordinary civil action. The property seized must be appraised within 10 days following such seizure, and the reasonableness of the appraisal may be determined within the action. According to the procedure, plaintiff shall have the right to give bond for the amount of the appraisal, and upon acceptance of the bond the court shall direct that the property be returned to the owner thereof. When bond is accepted, the subsequent return of the seized property shall not be permitted, but the bond shall answer for the seizure if the validity of the latter is upheld.

In view of the picture presented by the facts stipulated, the problem raised is circumscribed to the question of whether plaintiff is the third innocent party protected, according to the rule applicable to situations such as these. One of the first expressions, if not the first, was made on this matter by this Court in *United States* v. *Nelson*, 44 P.R.R. 334 (1932). Nelson was an automobile dealer who delivered a vehicle to a purchaser to try it. The latter failed to return it in time and, on the contrary, he was arrested the next day,

which was Christmas Day, carrying a bottle of champagne, and the vehicle was confiscated. In reversing the judgment which upheld the confiscation, we said in that case:

"The salesman who allowed the chauffeur to take the car out on trial had known him for a year as the employee of a certain Doctor Vélez López. There is nothing to indicate that the chauffeur had been guilty of any previous misconduct. The salesman had no knowledge of anything to the chauffeur's discredit and had no reason to suspect him of being a bootlegger. There was nothing to put either Nelson or his salesman upon inquiry. The chauffeur obtained possession of the car on December 23. He was expected to return it before six o'clock in the afternoon. A fruitless search was made for him the next day. The first information received by Nelson as to the whereabouts of the chauffeur was that he had been arrested on Christmas eve for the illegal transportation of a bottle of champagne. When the salesman allowed the chauffeur to take the car out for a few hours two days before Christmas, he had no reason to anticipate that his prospective purchaser would keep the car over the holidays or that it would be seized by Prohibition officers, and Nelson did not assume the risk of confiscation."

Although no cases are cited in this opinion nor was the concept further elaborated, there is no question that we followed a rule to the same effect which is well established in many states. Subsequently, in the cases of *General Motors Acceptance* v. *Brañuela,* we were more specific and adopted at the same time one of the several prevailing criteria, possibly the most restrictive. In the original opinion in *Brañuela,* 60 P.R.R. 680 (1942), we construed § 62 of the Alcoholic Beverages Act.[1] The vehicle in question was sold on conditional sale and was seized while transporting 35 gallons of alcohol. The conditional vendor had assigned the

---

[1] "Section 62. The Treasurer is hereby authorized to confiscate any vehicle, boat, launch, or other water or air craft which is apprehended loaded or while loading, transporting, carrying or transferring any distilled spirits or alcoholic beverages illegally manufactured . . . and on which the taxes prescribed by this Act have not been paid; and same shall be sold at public auction . . ."

contract to General Motors Acceptance and the latter filed the ordinary action for repossession against the vendee, Petra Brañuela, and the Treasurer. It alleged breach of contract by the purchaser in using and permitting the use of the vehicle to transport liquor in violation of the Act. In affirming the judgment dismissing the repossession, we said through Mr. Justice De Jesús:

"The above provision is mandatory in so far as it authorizes the Treasurer to confiscate any vehicle, boat, etc., which is apprehended in the transportation of any distilled spirits or alcoholic beverages on which the taxes prescribed by law have not been paid. Statutes such as the one under consideration have been given different constructions as regards any rights to the vehicle held by third persons who had no knowledge of, or who had not consented to the unlawful use of the property, either expressly or impliedly. The appellant, in its brief as well as in its oral argument, proceeds on the theory that it did not have knowledge of, nor in any way consented to, the illegal use of the vehicle and asks us to construe § 62, *supra,* in the sense that its provisions are not applicable to it and that, therefore, its rights can not be affected by the violation of the law committed by the conditional buyer or its agent. *The argument of the appellant is not well founded, for it does not at all appear from the record that it is the innocent third party referred to in the decisions cited by it.* The mere fact that the appellant is the assignee of the rights of the conditional seller does not necessarily mean that, *prior to the violation which led to the seizure of the vehicle, it knew that the latter was being used for such purposes, nor does it exclude its express or implied consent to such use, by failing to repossess the vehicle from the transgressor.*

"In the case at bar the appellant *has failed to place us in a position to pass upon the question raised in its brief, since there is no ground on which to rely for assuming that it is an innocent third person and it was incumbent on the appellant—which now asserts it—to allege and prove that fact. The proceeding brought by the appellant is of a civil nature and there is no presumption whatever of innocence to justify the omission already referred*

*to*. This being so, the appellant is no more entitled than appellee Brañuela to prevent the confiscation of the vehicle.

.    .    .    .    .    .    .    .

"Having laid down this principle and taking up again the pleadings of the parties we must necessarily agree with the trial court that the petition does not state facts constituting a cause of action. *The appellant, as already stated by us, did not set out in any way facts placing the lower court in a position to determine whether § 62, supra, was really inapplicable to it.* As such a state of facts has not been shown, the status of the appellant, as appears from the petition, is, for all legal purposes, the same as that of Petra Brañuela, and as the vehicle can be confiscated, notwithstanding the rights of Petra Brañuela it could·also be confiscated in spite of the rights of the appellant, without violating in either case the clear provisions of § 62." (Italics ours.)

In the opinion on reconsideration of this judgment, 61 P.R.R. 701 (1943), Mr. Justice De Jesús himself rectified the latter concept, and we held that General Motors was entitled to a presumption of innocence under the rule that in *civil* proceedings in which the commission of a crime or criminal conduct is involved the innocence and good faith are presumed. In citing some examples, we invited attention to the disagreements existing in the decisions with regard to the rights of innocent third parties when the statute is silent as to those rights, and adopted the federal rule, which is more restrictive than that of many states, to the effect that since the confiscation proceeding is directed against the vehicle, the rights of innocent third parties were not protected, except in those cases in which it is proved that the possession of the vehicle has been obtained by the violator without the express or implied consent of the owner or of the third innocent party, citing as example the case of a stolen vehicle. We said that if the owner or third interested party directly or indirectly has placed the vehicle in the possession of the violator, his rights run the risk that goes along with

whatever use to which the one in possession dedicates the vehicle. The original judgment upholding the confiscation was reaffirmed.

Subsequently, in *Sánchez* v. *Treasurer*, 72 P.R.R. 127 (1951), we affirmed the judgment annulling the confiscation. The facts: The owner of a public-service automobile took a passenger carrying packages which were placed on the floor of the vehicle. They contained bootleg rum. A complaint was filed against the driver and the passenger and the vehicle was confiscated. The trial court concluded that the evidence showed that the owner and driver of the vehicle had no knowledge nor took part in the transportation of the liquor, being under the impression that the packages were ordinary packages. After comparing the facts in *Brañuela*, Mr. Justice De Jesús himself said:

"Despite the difference between the facts of this case and *General Motors Acceptance* v. *Brañuela, supra,* the doctrine established in the latter case gives us the necessary light to solve the problem now under our consideration. It is evident, we think, that if confiscation does not lie when neither the person entrusted with the vehicle nor the claimant has knowledge or reason to know the illegal use given to the vehicle, confiscation should likewise not lie when the person entrusted with the vehicle is the owner himself who is not guilty of the violation, as occurred here. We think it is desirable to state that the guilt or innocence of the person in charge of the automobile is a question of fact which must appear from the evidence. *Vandevander* v. *United States,* 172 F.2d 100 (C.A. 5, 1949)."

In *Metro Taxicabs* v. *Treasurer*, 73 P.R.R. 164 (1952), a vehicle owned by Metro Taxicabs, Inc., was confiscated while it was being used for transporting alcoholic beverages on which the corresponding internal-revenue tax had not been paid. After analyzing the evidence, this Court said:

"Based on these facts, it is easy to note that the conclusion of the lower court, in the sense that 'This case practically deals with theft of the use of the taxi'—after stating 'As a matter

of fact, therefore, the use or possession of the taxicab by Ángel Gómez Gutiérrez was illegal and unauthorized'—is erroneous. The vehicle was in Alicea's possession, plaintiff's employee, and Gómez came into its possession with Alicea's authorization, who gave it to Gómez so that he would go to 'take up a fare.' Disregarding now the explanation that Alicea gave to the Manager-treasurer as to what happened, see footnote 4, Alicea's own testimony reveals that when Gómez returned with the 'smuggled rum' inside the car to the place where the former had stayed drinking coffee while waiting for him, Alicea got into the car 'because he had to deliver the car,' *notwithstanding that he had noticed that the car was 'loaded with rum.'* Although when the trial judge asked him 'Did you protest or not?' he answered 'Yes,' he did not state however, in what consisted his protest nor how he had manifested it. On the contrary, *his own testimony reveals his consent—having already knowledge of the existence of the smuggling*—in allowing Gómez to continue in possession and control of the vehicle thereafter allowing it to be used in the transportation of clandestine rum.

"According to Alicea's testimony—on which the trial judge bases all his findings of fact—and without considering other particulars which arise from the rest of plaintiff's evidence, it is obvious that this case deals, at most, with the unauthorized use of a vehicle by the employee to whom it was entrusted, who delivered it to, and consented and allowed another person to use it unlawfully. That circumstance, however, does not protect plaintiff." (Italics ours.)

Reference was made to the *Brañuela* case and we finally said:

"But evidently none of these situations exist in the case at bar. The vehicle herein was not stolen from plaintiff, nor from its employee—Alicea. He delivered it to Gómez—even if by doing so he was violating the rules of the company—and Gómez, *with his privity and consent used the vehicle for the transportation of smuggled rum.*" (Italics ours.)

In *Commonwealth* v. *Superior Court; Torres, Int.,* 76 P.R.R. 789 (1954), we upheld the confiscation of a vehicle for violation of the Weapons Law. The owner devoted it to

public service and it was operated by her employee. We said on that occasion:

"The respondent court concludes that the operator of the vehicle had 'good reasons to believe that the weapon was being unlawfully transported and that the vehicle was being used for the illegal transportation of that firearm.' Although chauffeur Colón did not carry on his person the revolver at the time it was seized by Corporal Pierantoni, *the fact is that his knowledge that Feliciano was unlawfully carrying a weapon made him a coparticipant of the unlawful act of the transportation.*" (Italics ours.)

In the light of our decisions, even though they have followed a restrictive criterion in favor of confiscation, we cannot agree with the trial court that the only answer in situations such as these is the fact that the action is directed against the thing *"res,"* so that the rights of innocent third parties are neither involved nor protected. Such generalization of the applicable rule of law is not proper in all cases. Each case must be examined and weighed in the light of its own facts, since the nature *"in rem"* of the action does not divest it of its essentially punitive condition and of inflicting punishment. The prevailing principle herein is clear, which we do not alter at all, that one who grants or delivers the possession of a vehicle ordinarily assumes the risk of the illegal use to which it may be devoted. However, not every delivery of the possession has similar motivations, nor identical justification, nor the same necessity, nor similar purposes. This case must be decided on its own facts. According to the facts stipulated, it involves the possession made necessary for business purposes. The Government admitted through the stipulation that plaintiff "expressly instructed" his employee to use the vehicle "exclusively" for the lawful purpose referred to in the stipulation. Also, "not to use the vehicle in question" until the next morning when he was to deliver the material loaded therein.

■ Act No. 56 of June 16, 1956 (Sess. Laws, p. 172), which amends § 444a of the Penal Code (larceny of use), provided that any person who, without permission of the owner or of the person representing him, *wilfully takes* any automobile or other motor vehicle "for the purpose of temporarily using the same," shall be guilty of a misdemeanor; and if the person commits or attempts to commit another felony while using the same, he shall be guilty of a felony. Unlike the facts in *Metro Taxicabs* in which it could not be said that an offense of larceny of use was committed by the manner in which the owner's agent placed the violator in possession of the vehicle, the facts stipulated in this case permit of a different conclusion. From the time the employee unloaded the material from the vehicle in his custody with the intention of using the same, as he did, his action had all the characteristics of larceny of use. There is nothing in the language of § 444a, as amended, to imply that the conversion of an automobile to an unlawful use, in the light of that section, may not occur under the circumstances shown by the facts of the case at bar. In the light of the facts stipulated, it may be reasonably inferred that the case comes within the recognized exception which protects the right of an innocent third party.

The judgment appealed from will be reversed and another rendered instead setting aside the confiscation.